IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RATNA VIJAYANANDA,<br>    Plaintiff, | §<br>§<br>§ | |
| v. | §<br>§ | CIVIL ACTION NO. 4:17-cv-1103 |
| DRILLMEC, INC., DRILLMEC<br>DRILLING TECHNOLOGIES, TREVI<br>GROUP LLC, SUMMIT SERVICES INC.,<br>AND TRINET INC.<br>    Defendants. | §<br>§<br>§<br>§<br>§<br>§ | <br><br><br><br>JURY DEMANDED |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT:

COMES NOW, Plaintiff, Ratna Vijayananda, and files this Original Complaint, complaining of Defendants, Drillmec, Inc., Drillmec Drilling Technologies, Trevi Group LLC, Summit Services Inc. and TriNet Inc. (collectively "Defendants"), and for her cause of action, shows the Court as follows:

## I.
## INTRODUCTION

1. This action seeks equitable relief, actual economic damages, punitive damages, compensatory damages, attorney's fees, expert witness fees, taxable costs of court, prejudgment and post-judgment interest for Defendants' gender discrimination, equal pay violations and retaliation, in violation of Title VII of the 1964 Civil Rights Act, as amended 42 U.S.C. § 2000e *et seq.* ("Title VII"), the Equal Pay Act, 29 U.S.C. § 206 *et seq.*, and the Texas Commission on Human Rights Act, as codified in the Texas Labor Code § 21.001 *et seq.*,

2. Plaintiff demands a jury on all issues triable to a jury.

## II.
## PARTIES

3.	Plaintiff, Ratna Vijayananda, is a former employee of Defendants.

4.	Defendant Drillmec, Inc. is a Texas Corporation authorized to do business in Texas. This Defendant may be served with process through its registered agent for service of process, Paolo B. Ballerini, 3000 Weslayan Street, Suite 210, Houston, Texas 77027.

5.	Defendant, Drillmec Drilling Technologies is a Texas corporation duly authorized to conduct business in the State of Texas. This Defendant may be served with process through its registered agent for service of process, Paolo B. Ballerini, 3000 Weslayan Street, Suite 210, Houston, Texas 77027.

6.	Defendant Trevi Group LLC is a Texas Limited Liability Corporation authorized to do business in Texas. This Defendant may be served with process through its registered agent for service of process, Larry M. Tabash, 9408 Savannah Ridge Dr., Austin, Texas 78726.

7.	Defendant Summit Services Inc. is a Texas Corporation authorized to do business in Texas. This Defendant may be served with process through its registered agent for service of process, Charles B. Swank, 10002 Grover, Houston, Texas 77011.

8.	Defendant TriNet, Inc. is a Texas Corporation authorized to do business in Texas. This Defendant may be served with process through its registered agent for service of process, Laura B. Doan, 9310 Stone Porch Lane, Houston, Texas 77064

9.	Whenever in this Complaint it is alleged that Defendants committed any act or omission, it is meant that the Defendants' officers, directors, vice-principals, agents, servants, or employees committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of Defendants or was

done in the routine normal course and scope of employment of the Defendants' officers, directors, vice-principals, agents, servants, or employees.

## III.
## JURISDICTION AND VENUE

10. This is a civil action over which this court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343 (a)(3) and (4) and 1367(a).

11. The Court has personal jurisdiction over Defendants since they regularly conduct business in the State of Texas, and therefore has minimum contacts with the State of Texas.

12. Alternatively, the Court has personal jurisdiction over Defendants since the acts giving rise to this suit occurred within the State of Texas.

13. Venue is proper in the Southern District of Texas, under 28 U.S.C. § 1391(b) since a substantial part of the events or omissions giving rise to this cause of action occurred in the Southern District of Texas.

14. All conditions precedent to filing this lawsuit have been met.

## IV.
## PROCEDURAL REQUISITES

15. On or about June 24, 2015, Plaintiff filed a Charge of gender discrimination, Equal Pay Act violations, and retaliation against Defendants under Charge Number 460-2015-03296 with the Equal Employment Opportunity Commission ("EEOC") and Texas Workforce Commission—Civil Rights Division.

16. On February 27, 2017, the EEOC issued Plaintiff her Notice of Right to Sue letter on her Charge.

17. This suit has been filed within 90 days of Plaintiff's receipt of her Notice of Right to Sue letter.

18. Plaintiff has met all conditions precedent to the filing of this suit.

# V.
# FACTS

19. On January 16, 2012, Ratna Vijayananda was hired as the Human Resources Manager for Defendants, Drillmec, Inc., Drillmec Drilling Technologies, Trevi Group LLC and Summit Services, Inc. and TriNet Inc. ("Defendants").

20. At the time Plaintiff was hired, the Defendants' Human Resources department was in disarray and had no procedures in place to provide the employees with the necessary resources required by the Human Resources Department.

21. During her employment, Plaintiff created an employee handbook and implemented processes and procedures to be a resource for the employees, other departments and management alike, and to allow Drillmec to grow in accordance with its corporate goals.

22. In June 2014, Drillmec made some organizational changes and on June 30, 2014, Mat Castaneda was hired to be the Executive Vice President for Drillmec.

23. After Mr. Castaneda was hired, Plaintiff continued to report directly to Brando Ballerini, President of Drillmec.

24. However, Plaintiff also worked with Mr. Castaneda to help streamline the reporting structure within Drillmec and prepare new organizational charts at Mr. Castaneda's behest.

25. In the fall of 2014, Plaintiff noticed that she was being paid less than the male managers at Drillmec for comparable work.

26. Upon realizing the pay discrepancy, Plaintiff approached her supervisor and questioned why she was not being paid equitably with the male managers.

27. During that conversation, Plaintiff pointed out that as the HR Manager, she had similar or more responsibilities than many of the male managers, but that the male managers were all being paid substantially more than Plaintiff.

28. After Plaintiff raised her concerns about her discriminatory pay, Drillmec retaliated against Plaintiff in an attempt to remove her from the company.

29. Within six months of Plaintiff's first complaints of gender discrimination regarding her pay, Plaintiff was fired.

30. First, after complaining of her discriminatory pay, Plaintiff was told that she would not receive an annual raise.

31. No reason was given for why Plaintiff would not be receiving an annual raise.

32. Moreover, Plaintiff was the only executive level employee who was denied an annual raise at that time.

33. Plaintiff asked that Drillmec reconsider its decision to deny Plaintiff a raise and asked that she be compensated based on the work she performed.

34. Plaintiff also spoke to Pio Franchini about the substantial disparity in pay between Plaintiff and the male managers at Drillmec, and Plaintiff's belief about why she should be paid more.

35. Mr. Franchini is the HR Director for Trevi Group and Drillmec, Inc.

36. Drillmec Inc. is a wholly owned subsidiary of Trevi Group.

37. In February 2015, Drillmec announced that it was hiring a vice president of Human Resources.

38. Up to that point in time, Plaintiff had been the highest-level employee in Human Resources management at Drillmec and served on Drillmec's Executive Committee as the Human Resources head.

39. On March 4, 2015, Drillmec hired Shondra Patterson to be the Vice President Human Resources.

40. Prior to Drillmec hiring Ms. Patterson, Plaintiff was not allowed to apply for the Vice-President of Human Resources position.

41. Immediately upon Ms. Patterson being hired, Plaintiff noticed that Ms. Patterson was extremely hostile towards Plaintiff.

42. It appeared that Ms. Patterson was brought in to simply harass Plaintiff and force Plaintiff to resign from the company.

43. For example, Ms. Patterson never sat down with Plaintiff to discuss Ms. Patterson's role and Plaintiff's role going forward.

44. Instead of Ms. Patterson discussing with Plaintiff the changes in HR that affected Plaintiff, Ms. Patterson had the human resources files surreptitiously removed from Plaintiff's office at a time when Plaintiff was out of the office.

45. In addition, Ms. Patterson went out of her way to exclude Plaintiff from discussions, choosing to ask Plaintiff's new assistant for information rather than work with Plaintiff.

46. As a result of Ms. Patterson's refusal to interact with Plaintiff, Plaintiff requested a meeting with Ms. Patterson and Mr. Castaneda in order to outline what Plaintiff's role and responsibilities would be going forward.

47. On April 6, 2015, Plaintiff met with Mr. Castaneda and Ms. Patterson. At that time, instead of being given guidance on her role in HR in accordance with the stated purpose of the meeting Plaintiff had requested, Plaintiff was told that she was being placed on a 90-day Performance Improvement Plan (PIP).

48. Upon reviewing the document, Plaintiff was shocked.

49. In the PIP, Ms. Patterson included alleged interactions with Plaintiff that in fact had never occurred, and which had been completely fabricated by Ms. Patterson in an attempt to portray Plaintiff as a terrible performer who did not have basic human resources knowledge.

50. When Plaintiff attempted to discuss the errors and the misinformation in the PIP, Mr. Castaneda and Ms. Patterson yelled at Plaintiff and would not allow her to speak.

51. This meeting, which was supposed to be a meeting to outline Plaintiff's role, quickly became a "beatdown" session.

52. The meeting lasted approximately an hour and a half.

53. After the meeting, Plaintiff decided to submit a rebuttal to the PIP, since Plaintiff had been prevented from responding to the unfounded attacks on her job performance during the meeting.

54. As a result, Plaintiff began drafting a written response to the false allegations Ms. Patterson made against her in the PIP document.

55. On April 8, 2015, Plaintiff again met with Ms. Patterson and Mr. Castaneda to continue their discussion from April 6, 2015.

56. During that meeting, Plaintiff was informed that it did not matter what she said, or what proof Plaintiff provided to document her performance or show the falsity of the statements made against her, Drillmec was refusing to revoke the PIP or revise it in any way.

57. Given the clear statement, it was readily apparent that the PIP was simply a tool used by Drillmec to terminate Plaintiff or force Plaintiff to leave her employment.

58. Plaintiff had not finished her response to the PIP before the meeting.

59. Because it was clear to Plaintiff that she was being set up to be fired, Plaintiff wanted to ensure that she had adequate time to formulate her response to the lies made against her.

60. Therefore, Plaintiff asked if she could take another day to finish her response to the PIP.

61. However, Plaintiff's request was denied.

62. Because Plaintiff was not allowed any additional time to address the allegations in the PIP, Plaintiff sent her initial and unrevised response to Mr. Castaneda and Ms. Patterson on April 8, 2015.

63. Because Plaintiff's performance was under attack, Plaintiff also copied her direct supervisor, and the management team including the HR Director that Plaintiff also reported to in the parent company in Italy since that entity has direct and significant involvement in Drillmec's operations.

64. On April 9, 2015, Plaintiff was terminated from her employment at Drillmec effective April 11, 2015.

65. Plaintiff was told that she was being terminated because she was insubordinate by her refusal to sign the PIP and because Plaintiff sent the email with her response to the allegations and false information contained in the PIP.

66. The reason given to Plaintiff for her termination is false.

67. Plaintiff was not insubordinate by refusing to sign the PIP, especially since the PIP contained false information.

68. Plaintiff was the one who wrote the employee handbook and Plaintiff was familiar with what actions were considered "insubordination" and a refusal to sign a PIP in this situation was not one of those actions.

69. Moreover, Plaintiff was not insubordinate for sending her comments to her direct supervisor and the management team since Plaintiff followed the chain of command as well as Drillmec's open door policy.

70. Finally, the allegations made in the PIP surrounding Plaintiff's performance are false and Plaintiff had been told that providing evidence of those untruths would not be considered.

71. Rather, Plaintiff's termination was in retaliation for Plaintiff's complaint that she was being unlawfully discriminated against because of her gender by being paid less than her male peers. Thereafter, Drillmec engaged in a pattern of retaliation, including termination, in order to discredit Plaintiff by falsely claiming that she was not performing her job duties.

72. Plaintiff was terminated because she opposed gender discrimination and violations of the Equal Pay Act in the workplace, in violation of Title VII, 42 U.S.C. §§ 2000e *et seq.*, the Equal Pay Act, 29 U.S.C. § 206, and the Texas Commission on Human Rights Act, as codified in Chapter 21 of the Texas Labor Code. I also believe Drillmec violated.

73. Direct and circumstantial evidence demonstrates that Plaintiff was terminated based on her gender, and in retaliation for her complaints about gender discrimination.

## VI.
## CAUSE OF ACTION—GENDER DISCRIMINATION

74. Plaintiff incorporates by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

75. As described above, direct and circumstantial evidence exists showing that Defendant intentionally discriminated against Plaintiff, subjecting Plaintiff to different terms and conditions of employment because of her gender, in violation of Title VII, 42 U.S.C. §§ 2000e *et seq.*, and the Texas Labor Code.

76. As a result of Defendants' actions, Plaintiff has suffered loss of wages, both in the past and in the future, as well as emotional pain, mental anguish, suffering, inconvenience, loss of enjoyment of life in the past, and in the probability will continue to suffer in the future.

77. Additionally, the aforementioned action was done willfully or with reckless disregard for the federally protected rights of the Plaintiff, entitling Plaintiff to punitive damages.

## VII.
## CAUSE OF ACTION - RETALIATION
## IN VIOLATION OF TITLE VII AND THE TEXAS LABOR CODE

78. Each and every allegation contained in the foregoing paragraphs are re-alleged as if fully rewritten herein.

79. During her employment, Plaintiff opposed Defendants' discriminatory practices to which she was subjected because of her gender.

80. As described above, after Plaintiff complained to Defendants about the unlawful gender discrimination to which she was being subjected, Defendants retaliated against her, and terminated her employment, in violation of Title VII, 42 U.S.C. § 2000e, et seq., and the Texas Labor Code.

81. As a result of Defendants' actions, Plaintiff has suffered loss of wages and benefits, both in the past and in the future, as well as emotional pain and mental anguish in the past, and in the probability will continue to suffer in the future.

82. Additionally, the aforementioned actions were done with malice or with reckless disregard for the federally protected rights of the Plaintiff, and an award of punitive damages is therefore appropriate.

## VIII.
## CAUSE OF ACTION—EQUAL PAY ACT VIOLATION

83. Plaintiff incorporates by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

84. As described above, direct and circumstantial evidence exists showing that Defendant intentionally discriminated against Plaintiff, subjecting Plaintiff to different terms and conditions of employment because of her gender, in violation of the Equal Pay Act, 29 U.S.C. § 206.

85. Defendants' violation of the Equal Pay Act was willful.

86. As a result of Defendants' actions, Plaintiff has suffered loss of wages, both in the past and in the future, as well as emotional pain, mental anguish, suffering, inconvenience, loss of enjoyment of life in the past, and in the probability will continue to suffer in the future.

87. Additionally, the aforementioned action was done willfully or with reckless disregard for the federally protected rights of the Plaintiff, entitling Plaintiff to punitive damages.

## IX.
## CAUSE OF ACTION - RETALIATION
## IN VIOLATION OF THE EQUAL PAY ACT

88. Each and every allegation contained in the foregoing paragraphs are re-alleged as if fully rewritten herein.

89. During her employment, Plaintiff opposed Defendants' discriminatory pay practices to which she was subjected in violation of the Equal Pay Act.

90. As described above, after Plaintiff complained to Defendants about the unlawful pay practices to which she was being subjected in violation of the Equal Pay Act, Defendants retaliated against her, and terminated her employment, in violation of the Equal Pay Act, 29 U.S.C. § 211.

91. Defendants' violation of the Equal Pay Act was willful.

92. As a result of Defendants' actions, Plaintiff has suffered loss of wages and benefits, both in the past and in the future, as well as emotional pain and mental anguish in the past, and in the probability will continue to suffer in the future.

93. Additionally, the aforementioned actions were done with malice or with reckless disregard for the federally protected rights of the Plaintiff, and an award of punitive damages is therefore appropriate.

## X.
## DAMAGES

94. Each and every allegation contained in the foregoing paragraphs are realleged as if fully rewritten herein.

95. Plaintiff seeks to be made whole and, as a result, requests all appropriate damages from Defendants allowed under the law.

96. Plaintiff has lost compensation and benefits, for which she seeks as back pay, including wages, commissions, bonuses, benefits and any other compensation.

97. In addition, Plaintiff demands reinstatement, or front pay in lieu of reinstatement, including but not limited to any and all future lost wages, commissions, bonuses, benefits and any other compensation.

98. Plaintiff demands attorney's fees, expert witness fees, pre-judgment and post-judgment interest, costs of court and any other damages allowed.

## XI.
## JURY DEMAND

99. Plaintiff requests a trial by jury on all issues triable by a jury in this case.

## XII.
## RELIEF REQUESTED

100. Plaintiff respectfully requests that she be granted judgment for the following relief:

    a. For actual damages, including appropriate backpay, commissions, bonuses and any other compensation, and reimbursement for lost pension, insurance, and all other benefits;

    b. For reinstatement, or front pay in lieu of reinstatement;

    c. For liquidated, compensatory and punitive damages as allowed by law;

    d. For attorneys' fees;

    e. For expert witness fees incurred by Plaintiff in the preparation and prosecution of this action;

    f. For pre-judgment and post-judgment interest as allowed by law;

    g. For costs of court, costs of prosecuting Plaintiff's claim; and

    h. For such other and further relief to which Plaintiff may be entitled under the relevant statutes or be justly entitled.

WHEREFORE PREMISES CONSIDERED, Plaintiff prays that after trial by jury she be awarded the relief requested above, and all such other further relief, whether at law or in equity, to which Plaintiff may show herself justly entitled.

Respectfully submitted,

Ahmad & Capodice PLLC

/s/ Nasim Ahmad
Nasim Ahmad
State Bar No. 24014186
nahmad@cline-ahmad.com
Dwain Capodice
State Bar No. 24031915
Ahmad and Capodice PLLC
24900 Pitkin, Suite 300
The Woodlands, Texas 77386
Telephone: (832) 767-3207
Facsimile: (281) 864-4379

ATTORNEYS FOR PLAINTIFF
RATNA VIJAYANANDA